EDWARD KELLY, Appellant, *v.* JAMES C. BROWER, Respondent.

*Court of Appeals, February 12, 1892.*

*Vendor and purchaser.* *Title.*—Specific performance of a contract to convey real estate will be decreed, where there is no reasonable ground for apprehension that the vendor's title to any portion of the premises described in the contract is defective, or that the vendee may be prejudiced, for any such reason, by specifically performing it.

Appeal from judgment entered on the order of the general term of the supreme court in the second judicial department, affirming judgment entered on decision of the special term.

*Joseph A. Burr*, for appellant.

*William T. Gilbert*, for respondent.

BRADLEY, J.—The contract describes a parcel of land seventy-five feet in width on Elm street, and the controversy

has relation to a strip of land fourteen and a half inches in width on that street of the premises so described. While the plaintiff contends that the defendant had no title to that portion of the contracted premises, the latter insists to the contrary. It therefore becomes necessary to refer to the evidences of title furnished at the trial. It appears that Coit owned a tract bounded north by Elm street, East by Central avenue and southerly and westerly by Myrtle avenue, which ran north-westerly into Elm street at the western termination of the tract. In July, 1859, he conveyed to Stebbins and Bloodgood lots 74, 75, 76 and 77 designated as such on a map and so distinguished in the deed, in which they were bounded north by that portion of Elm street commencing at a point 139 and 55-100 feet westerly from the south-westerly corner of that street and Central avenue and extending 100 feet west therefrom. Those four lots were each twenty-five feet in width on that street, and the west line of lot seventy-seven as there described was 239 55-100 westerly from such corner. The title of the defendant was dependent upon that so conveyed to Stebbins and Bloodgood through which it was derived. They, in November, 1885, conveyed to the Murphys, who in December, 1886, conveyed to the defendant. The description of the premises was given alike in both those deeds, and they contained the same description as that in the contract in question made by the defendant with the plaintiff. In it there was no designation of lots by numbers. And the northerly line as there described of the premises was that portion of Elm street commencing at a point 165 feet and nine inches westerly from Central avenue and extending westerly along Elm street seventy-five feet.

It is claimed on the part of the defendant that this line is the northern boundary of lots 75, 76 and 77. Those lots number from east to west, and each is twenty-five feet in width on Elm street. By the description in the deed to Stebbins and Bloodgood, the east line of lot 75 is represented as 164 55-100 feet west of Central avenue. It is quite evi-

dent that the defendant supposed he had title to the whole of those three lots, and that his purpose in making the contract was to sell them to the plaintiff. But it will be observed that in view of what has been thus far said, that line apparently extended fourteen and a half inches further west on Elm street from Central avenue than did the land as described in the deed to Stebbins and Bloodgood; and if that was so in fact, it embraced that width of land to which the defendant had no title. This objection the defendant sought to obviate by proving that by a survey of the Coit tract, made many years after the date of the last mentioned deed, it was found to be fourteen and a half inches longer on Elm street than it had been represented by the previous survey and map; and that in making the later survey that increase or surplus had been given to the lots on the east end and fronting on Central avenue. The northerly line on Elm street of the lots so fronting on the avenue described by the earlier survey and map as 89 55-100 feet in length, was by the later one represented as ninety feet nine inches in length, thus accounting for the increased distance from that avenue along Elm street to the east line of lot 75 and west line of 77. The question is whether this explanation relieves the defendant's title from the alleged objection to it. It appears that Central avenue was not opened at the time of the conveyance to Stebbins and Bloodgood, but that it had then been laid out and monumented. It was opened as a public street in 1871, and the trial court found that it as opened was located fourteen inches to the east of its westerly side as designated on the Coit map. If that was so, the surplus as found by the later survey was necessarily in the lots fronting the avenue, and the plaintiff had no cause to complain of the description as given in the contract. But no direct evidence is found in the record that the location of the line of Central avenue as laid out, has, as opened, been changed. And such finding is without support, unless it may be found in inference to that effect.

If the west or rear line of the lots fronting on Central avenue remained the same as it was when the deed was made to Stebbins and Bloodgood, the conclusion would follow that those lots had been extended fourteen and a half inches further east, or that their length by the first survey was to that extent erroneously represented. In either event the description in the contract would have correctly embraced the lots 75, 76, 77. The surveyor who made the later survey also made that represented by the Coit map. He also made the map. And he testified that when he made it he "made the Stebbins and Bloodgood property begin eighty-nine feet six and a half inches from the corner instead of ninety-feet and some inches." He evidently had reference (as we are now advised) to the west line at Elm street of the lots fronting on Central avenue, as so far as appears by the record here the east line of the land of those persons was fifty feet west of that line. There is evidence that prior to the conveyance to Stebbins and Bloodgood there was a fence on the line between lots 77 and 78, and that such fence still remains there. And the surveyor testified that this fence was 241 feet and three inches westerly on Elm street from Central avenue.

The evidence locates the fence six inches west of the west line of lot 77 as represented by the late survey, and consequently places lots 75, 76 and 77, less six inches in width, within the boundaries of the land described in the contract. But it is said that because it does not appear that this fence was a practical location of the line between those two lots, and in view of the fact that the line between them as made by the first survey and represented by the Coit map was 239 feet and six and one-half inches westerly from Central avenue, and as no reference is made to the fence in any of the deeds as the line between those lots, the location of that line must be governed by metes and bounds rather than by the fence. We assume that is so, and such will be its treatment for the purposes of the question in the present case.

While the existence of the fence of itself has no importance, the evidence of its location in reference to the line between lots 77 and 78 has a bearing upon the question which may arise out of the comparison of the distances of that line from Central avenue as represented by the two surveys.

The evidence shows that the difference as represented by them is found in the lots fronting on Central avenue; that it does not change the location of the line of lots further west nor the distance from the west line of the lots so fronting on the avenue to the line of the lots west of it. This tends to establish the fact that the length on the north line of those lots on the avenue was erroneously represented by the first survey or that they extend east fourteen inches further than they then did. It is sufficient for the purposes of the description in question that the length of the line between lots 77 and 78 from Central avenue is correctly given by the last survey, with which that in the contract corresponds. This conclusion was warranted by the evidence. Both Coit and the surveyor testified that the fence was on that line. There is no dispute of facts except such as may arise out of the two surveys. And in reference to the boundaries of lots 75, 76, and 77, the trial court found that the courses and distances in the deed to the Murphys (which were the same as in the contract) were the actual courses and distances as they existed at the time such deed was made. This finding has the support of evidence. And in view of such evidence and finding it cannot be held that the title of the defendant to the land or any portion of it which he undertook to sell and convey to the plaintiff, was rendered doubtful by the increased length of line as represented by the last survey and in the contract from the avenue to the eastern boundary of lot 75. The discrepancy of six inches, if it turn out to be such, does not in this case seem substantial, and it is not seen how the plaintiff can be prejudiced to that extent. If the west line of the premises does not into six inches reach the west line of lot 77, and the

requisite quantity requires it, he takes that much from lot 74, to which so far as appears the grantors of the Murphys had title at the time the deed was made.

Upon the facts furnished by the evidence and found by the court there is no reasonable ground for apprehension that the defendant's title to any portion of the premises described in the contract is defective or that the plaintiff may be prejudiced for any such reason by specifically performing it.

The judgment therefore should be affirmed.

Judgment affirmed, with costs.

All concur.

---

NOTE.

As to what constitutes a marketable title, see Mutual L. Ins. Co. v. Woods, 121 N. Y. 302; Goldman v. Banta, 58 Hun, 609; Todd v. Union D. S. Inst., 128 N. Y. 636; Hayes v. Nourse, 114 N. Y. 397; Ferry v. Sampson, 112 N. Y. 415; McGrane v. Kennedy, 32 N. Y. St. Rep. 310; Abbott v. James, 111 N. Y. 673; Alkus v. Goettman, 60 Hun, 470; Porterfield v. Payne, 57 Id. 591; Uhl v. Loughran, 52 Id. 611; Simis v. McElroy, 60 Id. 583; Droge v. Cree, 39 N. Y. St. Rep. 264; Hemmer v. Hustace, 51 Hun, 457; Moore v. Williams, 115 N. Y. 586; Terry v. Westing, 52 Hun, 610.; Mead v. Mead, Id. 614.; Bradley v. Leahy, 54 Hun, 390; Fitzpatrick v. Sweeny, 56 Id. 159; Todd v. Union D. S. Inst., 118 N. Y. 337; Keenan v. Bird, 60 Hun, 175; Oppenheimer v. Humphreys, 56 Id. 649; Vought v. Williams, 120 N. Y. 253; Kilpatrick v. Barron, 125 N. Y. 751; Toole v. Toole, 112 N. Y. 333; Fruhauf v. Bendheim, 53 Hun, 636; Mayer v. Boyd, 51 Hun, 291; Watkins v. Reynolds, 123 N. Y. 211; Reynolds v. Cleary, 61 Hun, 590; Dingley v. Bon, 130 N. Y. 607; Kelly v. Brower, 132 Id. 539; Hutton v. Weber, 43 N. Y. St. Rep. 56; Holly v. Hirsch, 63 Hun, 241; Keller v. Lang, 63 Id. 48; Harris v. Strodl, 132 N. Y. 392; O'Neill v. Van Tassell, 63 Hun, 629; Matter of Dunn, 45 N. Y. St. Rep. 830.